**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION – COLUMBUS**

| | |
|---|---|
| **ROBERT WALKER,** on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>**NAUTILUS, INC.**<br>    Defendant. | Case No.<br><br>**PROPOSED CLASS ACTION**<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

The allegations made in this Complaint are based upon information and belief except those allegations that pertain to Plaintiff, which are based on personal knowledge. Each allegation either has evidentiary support or, alternatively, pursuant to Rule 11(b)(3) of the Federal Rules of Civil Procedure, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

**INTRODUCTION**

1.     Plaintiff Robert Walker ("Plaintiff") brings this proposed class action on behalf of himself and similarly-situated purchasers of Nautilus, Inc. ("Defendant") treadmills, challenging the conduct of Defendant in the advertising, marketing, and sale of its personal fitness treadmills (the "Treadmills"),[1] which are developed, manufactured, marketed and sold for household use under the brand names Nautilus, Schwinn, and Bowflex. The Treadmills are incapable of reaching

---

[1] Defendant manufactures, markets, and sells multiple treadmill models under its self-named Nautilus brand, Schwinn brand, and its Bowflex brand, including the Nautilus T618 (3.5 Continuous Horsepower ("CHP")), Nautilus T616 (3.00 CHP), Nautilus T614 (2.75 CHP), Schwinn 570T (3.0 CHP), Schwinn 530i (2.75 CHP), Schwinn 510T (2.6 CHP), Bowflex BXT216 (4.0 CHP), Bowflex BXT116 (3.75 CHP), and Bowflex BXT6 (3.0 CHP)(sold at Dick's only). During the relevant time period, Defendant also manufactured, marketed, and sold the following discontinued treadmill models with false and misleading CHP representations: Bowflex BXT028; Bowflex BXT088; Bowflex BXT116, Bowflex BXT128, Bowflex BXT188; Bowflex 5 Series (2.5 CHP); Bowflex 7 Series (3.0 CHP); Nautilus T514 (2.75 CHP); Nautilus T516 (3.2 CHP); Nautilus T628 (3.5 CHP), Nautilus T626 (3.0 CHP), Nautilus T624 (2.75 CHP), Schwinn 870 (3.0 CHP), Schwinn 830 (2.75 CHP), and Schwinn 810 (2.6 CHP).

and maintaining Defendant's overstated and inflated continuous horsepower representations during normal designed household exercise use. Plaintiff seeks damages and equitable relief on behalf of himself and all others similarly situated.

2.      The treadmill motor horsepower rating is one of the most prevalent and recognized specifications a consumer has to compare when purchasing a treadmill. The horsepower delivered by the motor directly affects the quality of the treadmill's performance and a reasonable consumer's purchasing decision. Defendant has deceitfully "out-spec'ed" its competition with false and misleading horsepower ratings intended to lure consumers into purchasing its treadmills and paying an inflated price based on the horsepower misrepresentations.

3.      Defendant misleads consumers into believing that the Treadmills can generate and maintain the represented continuous horsepower, even though in fact the horsepower misrepresentations can never be obtained during actual household use by the Plaintiff and consumer Class members. Defendant manufactures, develops, markets, distributes, and sells a variety of treadmill models throughout the country, including the Treadmills Plaintiff and Class members have purchased. Defendant charges a premium for the Treadmills based on the misrepresented continuous horsepower capabilities available during household usage. Defendant represents on its websites, marketing materials, and in store displays at third-party retailers (such as Dick's Sporting Goods) that the Treadmills have a specific power output, quantified in continuous horsepower ("CHP"), that they cannot produce during household usage.

4.      Defendant's long-term strategy involves creatively marketing its equipment, both directly to consumers and through its retail customers (such as Dick's Sporting Goods and Amazon.com), while leveraging its well-known brand names.

5.     Defendant sells its Treadmills directly through its website as well as through third-party retailers, such as Amazon.com, Dick's Sporting Goods, Target, Walmart, and Best Buy.

6.     Third-party retailer, Amazon.com ("Amazon") accounted for 11.5% of Defendant's total net sales in 2018, and 15.2% of Defendant's total net sales in 2019.[2]

7.     Third-party retailer, Dick's Sporting Goods ("Dick's") also accounted for 13.8% of Defendant's total net sales in 2018, and 11.7% of total net sales in 2019.[3]

8.     Nautilus consistently and prevalently advertises and markets that the Treadmills operate at a continuous horsepower between 2.6 and 4.0 CHP, depending on the specific model. The pricing increase for specific models is in direct relationship to the advertised CHP misrepresentations. All of Defendant's treadmills operate in household use well below Defendant's continuous horsepower representations and all maintain similar continuous horsepower regardless of the misrepresented CHP.

9.     Defendant's false and misleading Treadmill CHP advertising presents a continuing threat to Plaintiff and consumers, and as such, the conduct is ongoing. Plaintiff has a significant probability of future harm because of the ongoing, highly technical, and not readily apparent horsepower misrepresentations when purchasing future fitness equipment. Defendant continues to prevalently display its CHP misrepresentations and fails to sufficiently notify a reasonable consumer, like Plaintiff, as to the true operating capabilities of the Treadmills. Reasonable consumers cannot properly evaluate the Treadmills' actual power capabilities and are left to believe Nautilus's CHP misrepresentations are accurate.

---

[2] https://nautilusinc.gcs-web.com/static-files/69584bb1-eb83-4d48-8a7c-bed73e9223cd (Form 10-K, pg. 5), (last accessed July 2, 2020).
[3] *Id*.

10. Defendant labels the Treadmills with false and misleading horsepower ratings because such representations are highly material to consumers and serve to differentiate the Treadmills from the competition. Reasonable consumers expect to receive the horsepower Defendant claims its Treadmills maintain, but instead, Plaintiff and Class members only receive a small fraction of the horsepower promised by Defendant while exercising.

11. The Treadmills are specifically designed for use on a nominal 120-volt circuit with an operating current of 15 amps.

12. Defendant's continuous horsepower representations are inaccurate, misleading, and materially overstate the Treadmills' true operating horsepower. Indeed, it is not possible for these Treadmills to operate at a continuous horsepower of 4.0 or even 2.6 CHP when plugged into a standard 120-volt, 15-amp outlet found in residential homes in the United States.

13. Defendant recognizes that consumers view a treadmill's power as an important characteristic in making a treadmill purchase for their home. Defendant specifically highlights claims about the Treadmills' horsepower in its advertising, on its websites, in its press releases, and at its point of sale marketing materials prominently displayed at Dick's stores and online by third-party retailers like Amazon.

14. Defendant's false and overstated horsepower representations are designed to mislead consumers into believing the Treadmills have much more power than they actually have, leading to consumers overpaying for Treadmills and/or causing consumers to purchase the Treadmills instead of competitor manufacturers' treadmills or less expensive models.

15. Reasonable consumers like Plaintiff expect the Treadmills to produce the represented horsepower stated in and on Defendant's marketing materials, website, and/or retail store displays, during household operation, and would not have purchased the Treadmills or would

have paid less had they known that Defendant's representations regarding the Treadmills' continuous horsepower were misleading. Defendant's Treadmills are worth substantially less than what Plaintiff and Class members paid to purchase them.

16.     Plaintiff suffered damages resulting from Defendant's actions and omissions. Accordingly, Plaintiff brings this class action asserting claims against Defendant for violations of consumer protection and false advertising statutes, breaches of express and implied warranties, and negligent misrepresentations.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because Defendant is headquartered in Vancouver, Washington and has been incorporated in the State of Washington since 1993; Plaintiff is a citizen of, and purchased a Treadmill within, the State of Ohio; there are more than 100 Class members; and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

18.     Venue is proper in this Court because Defendant has distributed, advertised, and sold Treadmills in this District, including the Treadmill Plaintiff purchased, and Plaintiff reviewed and evaluated Defendant's continuous horsepower representation and eventually purchased his treadmill in this District. Furthermore, Defendant's Treadmills are available to purchase from several retail locations throughout this District, and certain Nautilus and Bowflex treadmills are shipped from its distribution center within this District located at 5415 Centerpoint Parkway, Groveport, Ohio 43125.

## PARTIES

19.     Plaintiff Robert Walker purchased a Bowflex BXT116 treadmill online from www.bowflex.com on March 4, 2019 for the purpose of using the treadmill for personal use in his

home located in Bellefontaine, Ohio. After purchasing his Bowflex BXT116 treadmill, Plaintiff used his treadmill for ordinary use within his home and has not received the continuous horsepower that Defendant represents.

20.     In February and early March of 2019, Plaintiff reviewed Defendant's statements on its website that the Bowflex BXT116 treadmill was capable of producing 3.75 CHP when he was comparing the Bowflex BXT116 treadmill to other treadmill manufacturers, such as those listed by NordicTrack online, including but not limited to, Commercial 1750, T 9.5S, T 8.5S and T 6.5S treadmills. But for Defendant's representations and marketing stating that the Bowflex BXT116 treadmill produced 3.75 CHP, Plaintiff would not have purchased his Bowflex BXT116 treadmill or would have paid considerably less for it. Plaintiff paid a premium for the 3.75 CHP associated with his Bowflex BXT116 treadmill based on the horsepower representations.

21.     Plaintiff paid over $1,500.00 for his Bowflex BXT116 treadmill on March 4, 2019.

22.     Defendant is a publicly traded global technology driven fitness solutions company headquartered in Vancouver, Washington and incorporated in the State of Washington. Its products are sold under some of the most-recognized brand names in the fitness industry, including: Nautilus, Bowflex, Octane Fitness, and Schwinn. It operates through its Direct and Retail segments. The Direct segment offers products directly to consumers through television advertising, social media, its websites, catalogs, and inbound/outbound call centers. The Retail segment retails products through a network of independent retail companies with stores located in the United States and Canada, as well as internet-based merchandising.

23.     Defendant's "Nautilus" brand is a corporate umbrella brand used to differentiate certain specialized cardio, treadmills, ellipticals and bike products. Its "Bowflex" brand represents a highly regarded line of fitness equipment comprised of both cardio and strength products. And

its "Schwinn" brand is known for its popular line of exercise bikes, as well as Schwinn branded treadmills and ellipticals.

24.      In 2019, roughly 77% percent of Defendant's revenue was derived from sales of consumer cardio products.[4]

## STATEMENT OF FACTS

**Horsepower Overview**

25.      Horsepower is a unit of measurement used to quantify the mechanical power output of a motor or an engine.

26.      The "horsepower" measurement of power was adopted in the late 18th century by Scottish engineer James Watts to compare the output of steam engines with the power of draft horses. In describing electric power under the metric system, the term "watt" is now commonly used instead of horsepower as a measure of mechanical power output performed by an electrical motor. One unit of horsepower is equal to approximately 746 watts.

27.      The amount of mechanical power output generated by any given electrical motor can be determined by examining that electrical voltage available to it and the amperage that the motor is capable of drawing. To calculate an electrical motor's operating horsepower, voltage is multiplied by amperage and then by a fraction representing the efficiency of the motor. That total is then divided by 746 watts to convert the watts to horsepower.

28.      A simple equation thus describes how to calculate horsepower by multiplying the available voltage, amperage draw, and motor efficiency, and dividing that product by 746 (to convert into horsepower as measured by wattage):

$$\frac{\textbf{(Voltage)} \times \textbf{(Amperage)} \times \textbf{(Motor Efficiency)}}{\textbf{746}} = \textbf{HP}$$

---

[4] https://nautilusinc.gcs-web.com/static-files/69584bb1-eb83-4d48-8a7c-bed73e9223cd (last accessed July 2, 2020).

29.     Most electrical outlets in American homes are the standard 15-amp variety, with two slots and a U-shaped grounding third hole and have an accompanying 120-volt circuit. A 15-amp circuit is usually served by 14-gauge wire and is protected by a 15-amp circuit breaker or fuse based on building and electrical codes.

30.     Defendant's Treadmills are rated at 15 amps with a 120-volt circuit, which equates to a theoretical maximum output power of 1,800 watts or 2.41 horsepower without taking into consideration the motor's efficiency[5] or power factor. Heat and other factors also decrease the efficiency, which would further decrease the power output of the motor nearly fifty percent (50%).

31.     After factoring the effects of the power factor and efficiency loss, Defendant's Treadmills are capable of providing a mere fraction of the advertised continuous horsepower that Defendant markets its Treadmills as capable of providing while in household use.

32.     It is beyond the safety rating for an electrical device to draw more power than the receptacle and household electrical circuit it is designed for. If an electrical device does draw more power than the household electrical circuit it is designed for, the circuit-breaker will trip and cut off power to that circuit. As such, the Treadmills are incapable of drawing more power than a household outlet is capable of providing during actual household use.

33.     Defendant's horsepower representations seem to defy the laws of physics and allow Defendant's Treadmills to output more continuous horsepower than is actually capable of being input from a common household outlet power source in the United States and for which the Treadmills are rated. Based on Defendant's misleading horsepower representations, Defendant's Treadmills allegedly output more power than the actual energy input from a household outlet receptacle.

---

[5] Electric motor efficiency is the measure of the ability of an electric motor to convert electrical energy to mechanical energy.

34.     Defendant markets and sells the Treadmills as maintaining a certain "continuous horsepower," "continuous duty horsepower," or "CHP." CHP can be defined as a measurement of the motor's ability to maintain and continuously produce power over an extended period of time without exceeding the current rating of the motor.

35.     One of Defendant's largest third-party retailers (acting as Defendant's agent) explains in a section titled, "How to Choose the Right Treadmill," that the **"CHP measures how much power the motor maintains throughout the workout."**[6]

36.     CHP is often considered to be the most accurate indicator of a motor's power output because it is performed at the voltage used in application and operation by the motor. The CHP associated with a particular treadmill is meant to define "**how much power is maintained throughout the workout.**"[7] Additional industry experts have made clear that a "**continuous duty motor measures the minimum horsepower delivered at all points during a workout**."[8]

37.     The continuous horsepower associated with a treadmill is the "**measure of sustained power during regular use**. The continuous motor power is what is consistently delivered during heavy usage over an extended period of time."[9]

38.     The advertised CHP associated with Defendant's Treadmills are a misrepresentation unless the motor is capable of maintaining the stated horsepower rating at all times during the consumer's workout.

39.     Defendant's Treadmills are not capable of maintaining the advertised CHP at all times during a consumer's workout.

---

[6] https://protips.dickssportinggoods.com/sports-and-activities/exercise-and-fitness/how-to-choose-the-right-treadmill (emphasis added) (last accessed July 2, 2020).
[7] https://www.treadmillreviews.net/treadmill-motors-what-you-need-to-know/ (emphasis added) (last accessed July 2, 2020).
[8] https://blog.johnsonfitness.com/blog/treadmill_drive_motors_and_the_question_of_horsepower/ (last accessed July 2, 2020).
[9] https://treadmill-ratings-reviews.com/treadmill-articles/facts-about-treadmill-motors/ (last accessed July 2, 2020).

40.     At best, in order for Defendant to even come close to achieving the misrepresented horsepower capabilities of its Treadmills, Defendant would have to base its horsepower advertising on an inflated laboratory testing power draw (input) not achievable in household use. The laboratory testing power input would need to far exceed the current rating of the Treadmill motors while in household use, and thus cannot be truthfully represented, by definition, as the Treadmills' continuous horsepower capabilities.

41.     At best, Defendant bases its misrepresentations on exaggerated laboratory testing amperage draw, not available in household use, to claim that its Treadmills possess the inflated continuous horsepower capabilities. As evidenced, the motor used in a Bowflex BXT116 Treadmill which Defendant claims to possess 3.75 continuous horsepower is based on a power draw of amps materially above the 15-amp specification, well beyond what is capable during household use.

42.     For example, Defendant claims that its Bowflex BXT116 possesses 3.75 CHP which would equate to approximately 2798 Watts (3.75 x 746) of energy output delivered at all times during a consumer's workout. Stated otherwise, if the voltage is maxed out of a household electrical outlet at 120 volts, there would have to be approximately 23 Amps continuously delivered to the motor for the motor to maintain a 3.75 CHP throughout the workout.  This level of electrical current is impossible to maintain through a household outlet, and far beyond what the Treadmills are rated for.

43.     Defendant's advertised CHP is not a useful metric for a consumer to evaluate unless the motor is actually capable of attaining the continuous horsepower in actual use and under standard operating conditions. A reasonable consumer is led to believe that the continuous

horsepower representations are actually achievable while in normal exercise use based on Defendant's horsepower misrepresentations.

**Defendant's Horsepower Misrepresentations and Misleading Statements**

44.    Defendant uses misrepresentations and misleading statements to advertise its treadmills. For example:

a.    Advertising its Bowflex BXT216 treadmill as having a "Powerful 4.0 CHP motor"[10] equating to "Powerful Performance."



---

[10] https://www.bowflex.com/treadmills/ (last accessed July 2, 2020).

b.  Advertising its Nautilus T614 treadmill as having a "**2.75 continuous horsepower motor**…that offers reliability, high responsiveness and performance"[11]

c.  Advertising its Nautilus T618 treadmill as having a "**Powerful but quiet 3.5 CHP motor**," and stating that the "optimized and balanced workhorse motor maintains full running speed and immediate response as pace is adjusted up or down, throughout the workout."[12]

d.  Advertising its Schwinn 830 Treadmill as having a "**2.75 continuous horsepower motor** [that] keeps up throughout the workout."[13]

45.  In its product video link, Defendant clearly misrepresents its 4.0 CHP capabilities for its Bowflex BXT216 treadmill while in household use.[14]



---

[11] https://www.nautilus.com/t614/100393.html (emphasis in original) (last accessed July 2, 2020).
[12] https://www.nautilus.com/t618/100647.html (emphasis in original) (last accessed July 2, 2020).
[13] https://www.schwinnfitness.com/830/100518.html (emphasis in original) (last accessed July 2, 2020).
[14] https://www.bowflex.com/treadmills/compare/ (last accessed July 2, 2020)

46.     In its product video link, Defendant clearly misrepresents its 3.5 CHP capabilities for its Nautilus T618 treadmill while in household use.[15]



47.     Defendant also uses false CHP representations to sell Treadmills on third party websites such as Amazon. For example, the Nautilus T614 is advertised as having a "2.75 CHP motor that offers reliability, high responsiveness and performance for the user."[16]

---

[15] https://www.nautilus.com/nautilus-treadmills (last accessed July 2, 2020)
[16]  https://www.amazon.com/Nautilus-100393-T614-readmill/dp/B00KVZM6TW/ref=sr_1_4?dchild=1&keywords= nautilus&qid= 1587064043&sr=8-4 (last accessed July 2, 2020).



48.     Defendant also uses false CHP representations to sell Treadmills on third-party websites such as Dick's. For example:

      a.     Advertising the Bowflex BXT216 treadmill as having "4.0 continuous horsepower motor designed to deliver **powerhouse performance** & durability."[17]

      b.     Advertising the Bowflex BXT116 treadmill as having "3.5 Continuous horsepower motor designed to deliver **powerhouse performance** & durability."[18]

---

[17]     https://www.dickssportinggoods.com/p/bowflex-bxt216-treadmill-17bfxubwflxt216trtrd/17bfxubwflxt216trtrd (emphasis added) (last accessed July 2, 2020).
[18]     https://www.dickssportinggoods.com/p/bowflex-bxt116-treadmill-17nauubwflxt116trtrd/17nauubwflxt116trtrd (emphasis added) (last accessed July 2, 2020).

49.     As Defendant knew would happen, the fitness market has parroted the misleading horsepower representations, which has allowed for reviews on review websites such as:

    a.  **"Horsepower:** Aiming for a best-in-class reputation the [Bowflex] BXT116 powers its workout belt with a 3.75 CHP motor. This motor is strong enough for almost anyone's treadmill running. For comparison, 3.0 to 3.5 CHP is the norm for durable home treadmills… and 4.0 HP is the usual for marathon treadmills. (For a 4.0 CHP motor see the BXT216.)"[19]

    b.  "While the more expensive treadmill in the series—the Bowflex BXT216—comes equipped with a powerful 4.0 CHP motor, the standard horsepower for home treadmills is usually anywhere from 3.0-3.5 CHP, making the Bowflex BXT116 sill [sic] powerful at 3.75 CHP. The 3.75 CHP motor power will still allow for rigorous sessions—even multiple per day—and perhaps more importantly, for withstanding marathon-level training. This quality also turns out to be higher than the industry standards at the same price point. In sum, if you're training indoors for a marathon, or have multiple rigorous workout sessions a day (or share it with multiple family members), the BXT116 provides incredible value for the level of horsepower being delivered."[20]

50.     Each of Defendant's Treadmills prominently displays its misrepresented horsepower rating in its advertising material:

---

[19] https://www.treadmillreviews.net/bowflex-bxt116/ (emphasis in original) (last accessed July 2, 2020).
[20] https://www.topfitnessmag.com/treadmill-reviews/bowflex-bxt116-treadmill-review/ (last accessed July 2, 2020).

- "2.6 CHP" (Schwinn 810);[21]
- "2.75 CHP" (Schwinn 830);[22]
- "3.0 CHP" (Schwinn 870);[23]
- "2.75 CHP" (Nautilus T614);[24]
- "3.0 CHP" (Nautilus T616);[25]
- "3.5 CHP" (Nautilus T618);[26]
- "3.75 CHP Motor" (Bowflex BXT116);[27] and,
- "4.0 CHP Motor" (Bowflex BXT 216).[28]

51.    The picture below is an example of the Bowflex CHP misrepresentations described in the paragraph above:



---

[21] https://www.schwinnfitness.com/schwinn-treadmills (last accessed July 2, 2020).
[22] *Id.*
[23] *Id.*
[24] https://www.nautilus.com/nautilus-treadmills (last accessed July 2, 2020).
[25] *Id.*
[26] *Id.*
[27] https://www.bowflex.com/treadmills/ (last accessed July 2, 2020).
[28] *Id.*

52.     In addition to Defendant's online advertising horsepower misrepresentations, Defendant's in-store floor model displays across the country at Dick's Sporting Goods prominently exhibit Defendant's horsepower as a major selling feature listed at the top of the specifications.

53.     In addition to promoting the misrepresented horsepower capabilities to consumers online, Defendant also ensure that the misrepresentations are clear to consumers when viewing the actual Treadmills' in-store displays.[29]



54.     For example, the Bowflex BXT216 clearly touts the "Powerful 4.0 CHP motor" as the top featured spec under the "Superior Feature Set" on display in Dick's Sporting Goods retail stores.[30]

---

[29] Dick's Sporting Goods, Richfield, Minnesota, June 18, 2020.
[30] *Id.*



55.     In addition to the advertising signage misrepresentations in the store, the Bowflex

BXT6, sold exclusively at Dick's Sporting Goods, prominently displays the misrepresented "3.0

CHP Continuous Horsepower Motor" on the running deck motor cover.[31]



---

[31] *Id.*

56.     In direct correlation to the misrepresented horsepower and the various treadmill models that Defendant offers, it has priced the models according to the misleading continuous horsepower associated with each model, causing the higher misrepresented horsepower models to be priced incrementally. As Dick's recognizes: "The higher the CHP, the more expensive the cost."[32]

57.     Defendant's advertised continuous horsepower rating is fictional when compared to the actual power available in normal household operation. In order to achieve the misleading horsepower output that Defendant claims its treadmills are capable of achieving, the power input necessary when plugged into an outlet would have to be two to three times the actual capability of the electrical infrastructure found in homes in the United States.

58.     Upon information and belief, in addition to the household electrical limitations, the Treadmills also contain an onboard motor controller board which limits the inrush of possible electrical power surges, further limiting the continuous horsepower of the Treadmills well below Defendant's advertised horsepower capabilities.

59.     The continuous horsepower misrepresentations made by Defendant are more than mere subjective promotional statements that could be considered advertising puffery. Defendant's continuous horsepower misrepresentations are an objectively measurable and quantifiable metric that a reasonable consumer is drawn to believe is achievable when using the Treadmills for ordinary exercise use.

## CLASS ACTION ALLEGATIONS

60.     Under Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings this suit on behalf of himself and a nationwide class (the "Nationwide Class" or "Class") defined as follows:

---

[32] https://protips.dickssportinggoods.com/sports-and-activities/exercise-and-fitness/how-to-choose-the-right-treadmill (last accessed July 2, 2020).

**All persons in the United States who purchased a Treadmill, during the maximum period of time permitted by law, primarily for personal, family, or household purposes, and not for resale.**

61.     Under Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings this suit on behalf of himself and an Ohio-statewide class (the "Ohio Class" or "Subclass") defined as follows:

**All persons in Ohio who purchased a Treadmill, during the maximum period of time permitted by law, primarily for personal, family, or household purposes, and not for resale.**

62.     Plaintiff specifically excludes Defendant, its employees, agents, officer, directors, legal representatives, successors, subsidiaries, parent entities, or predecessors; class counsel; and the judicial officers and its associated court staff assigned to this case from the proposed Classes.

63.     The definitions of the Class and Subclass are unambiguous, and Plaintiff is a member of the Class and Subclass he seeks to represent.

64.     Plaintiff reserves the right to amend or modify the Class and Subclass definitions to create greater specificity, further division into subclasses, or limitation to particular issues as this case progresses.

65.     The Class is so numerous and geographically dispersed that joining all Class members would be impracticable. The exact number of Class members is unknown by Plaintiff at this time and can only be ascertained through appropriate discovery. Plaintiff believes that the Class numbers at least in the tens of thousands.

66.     The Subclass is so numerous and geographically dispersed in Ohio that joining all the members would be impracticable. The exact number of members in the Subclass is unknown by Plaintiff at this time and can only be ascertained through appropriate discovery. Plaintiff believes the Subclass numbers in at least the thousands.

67.     Plaintiff's claims are typical of the claims of the Class because Plaintiff purchased a treadmill from Defendant that was sold with a misleading continuous horsepower rating and suffered a pecuniary loss as a result of the purchase. Plaintiff's claims have the same essential characteristics as all other Class members' claims and the evidence to establish the facts and claims stated herein will be the same for Plaintiff and all other members of the Classes. All claims are based on the course of conduct and similar legal theories. All Class members, including Plaintiff, suffered the same type of injury and possess the same interests in pursuing this case as does Plaintiff, and none benefitted from the misleading representations. A single resolution of these claims would be preferable to a multiplicity of similar actions.

68.     Plaintiff's claims are typical of the claims of the Subclass because Plaintiff purchased a treadmill from Defendant that was sold with a misleading horsepower rating and suffered a pecuniary loss as a result of the purchase. The Subclass Plaintiff's claims have the same essential characteristics as all other Subclass members' claims and the evidence to establish the facts and claims stated herein will be the same for Plaintiff and all other members of the Subclass. Each Subclass claim is based on the course of conduct and similar legal theories. All Subclass members, including Plaintiff, suffered the same type of injury and possess the same interests in pursuing this case as does Plaintiff, and none benefitted from the misleading representations. A single resolution of these claims would be preferable to a multiplicity of similar actions.

69.     Plaintiff will fairly and adequately protect the interests of the members of the Class and the Subclass and has retained counsel competent and experienced in class action litigation.

70.     Defendant has acted or refused to act on grounds generally applicable to the Class and the Subclass, thereby making it appropriate for the Court to render final injunctive relief regarding the Class as a whole and the Subclass as a whole. Specifically, Defendant continues to

misrepresent the continuous horsepower available in its treadmills, making the harm to prospective treadmill purchasers ongoing, including Plaintiff who intends to be in the market to purchase another treadmill in the future. Because Defendant continues to use and promote its CHP representations in the marketing and sale of its treadmills, Plaintiff, members of the Class and the Subclass, and future purchasers will be similarly misled about the treadmills horsepower production during actual use thereby causing them to pay a price premium for inflated horsepower representations.

71.     Common questions of law and fact exist as to Class members' claims and Subclass members' claims and predominate over questions affecting only individual Class or Subclass members. Common legal and factual questions include, but are not limited to:

a.      The nature of Defendant's promotion of continuous horsepower representations;

b.      Whether Defendant misrepresented the continuous horsepower, and/or horsepower of the Treadmills;

c.      Whether Defendant's "CHP" claims were false and/or misleading;

d.      Whether Defendant knew or should have known its claims regarding the Treadmills' power were false and/or misleading;

e.      Whether Defendant's representations were material to consumers and the market;

f.      Whether the Treadmills produce the advertised "Continuous Horsepower" for any time material to consumer operation and use;

g.      Whether Defendant placed "CHP" ratings on the Treadmills' packaging;

h.  Whether Defendant provided point of sale materials to retailers for use in promoting Defendant's Treadmills and whether those materials included misleading references to continuous horsepower;

i.  Whether Defendant provided advertising copy or suggested promotional language to retailers for use in promoting Defendant's Treadmills and whether those materials included misleading references to continuous horsepower;

j.  Whether Defendant's Continuous Horsepower statements constituted contractual promises or warranties on the Treadmills;

k.  Whether Defendant's misleading representations caused it to receive money that it would not have received absent those representations;

l.  Whether Defendant's actions breached the duties it owed Plaintiff and the Class under express warranties for the Treadmills;

m.  Whether the Defendant's actions breached the duties it owed Plaintiff and the Class under its implied warranties regarding the Treadmills;

n.  Whether Plaintiff and the Class paid more for the Treadmills than they would have paid absent Defendant's misleading horsepower representations;

o.  Whether Class members are entitled to damages, restitution, and/or monetary relief and if so, the amount and nature of such relief; and,

p.  Whether the Court should enjoin Defendant from continuing to misrepresent the Treadmills' power.

72.  Resolution of each of these issues will turn upon evidence common to all Class and Subclass members.

73.     Resolution of issues common to all Class and Subclass members will predominate over individual issues.

74.     The issues common to the Class and Subclass and the nature of the common relief creates a cohesive class and/or subclass for injunctive relief.

75.     Treating this case as a class action rather than attempting multiple individual actions provides a superior method for the fair and efficient adjudication of this controversy because:

      a.   It will avoid a multiplicity of suits and consequent burden on the courts and Defendant;

      b.   It would be virtually impossible for all members of the Class and/or Subclass to intervene as parties-plaintiffs in this action;

      c.   It would assure uniform application of the laws and a single, uniform decision across the board without sacrificing procedural fairness or bringing about other undesirable results;

      d.   It will provide court oversight of the claims process, once Defendant's liability is adjudicated;

      e.   It would permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender; and,

      f.   It will permit the adjudication of relatively small claims by certain Class and/or Subclass members, who could not afford to individually litigate such claims against a large corporate Defendant.

76.     Plaintiff and the proposed Class and Subclass satisfy the requirements of Rule 23(b)(1)(A), (b)(2), and/or (b)(3).

77.     Plaintiff is not aware of any difficulties that are likely to be encountered in managing this action that would preclude its maintenance as a class action.

## PRE-LAWSUIT NOTICE

78.     On April 24, 2020, Plaintiff, on behalf of himself and similarly situated putative class members, provided Defendant with proper pre-suit notice before filing this lawsuit in an attempt to address Defendant's horsepower misrepresentations without court intervention and allow Defendant the opportunity to cure.

79.     Plaintiff provided Defendant with notice of its violations of state consumer protection laws, warranty claims, Magnuson Moss Warranty Act violations and negligent misrepresentation claims before filing this lawsuit, which Defendant failed to address. Plaintiff Walker's notice letter was delivered via FedEx to Defendant within a reasonable time after he discovered or reasonably should have discovered that his Bowflex BXT116 treadmill did not produce the represented 3.75 CHP.

## COUNT 1
### Breach of Express Warranty
### (on behalf of the Nationwide Class)

80.     Plaintiff restates and incorporates all other allegations in this Complaint.

81.     Defendant represented on the Treadmills' packaging, on Defendant's websites, and on point of sale materials used for display and sale of the Treadmills that the Treadmills had certain horsepower specifications, as noted herein, which Plaintiff and other consumers reviewed and considered before purchasing their Treadmills.

82.     As detailed above, these representations are false and/or misleading, and the Treadmills Plaintiff and the Class Members purchased do not conform to the above-noted horsepower representations and cannot operate as promised during household usage.

83.     These representations constitute express warranties as to the Treadmills' qualities, nature, and performance.

84.     These representations became part of the basis of the bargain for Plaintiff and the other Class members because they reviewed and considered such statements in deciding to purchase the Treadmills and because such statements are among the facts a reasonable consumer would consider material in the purchase of treadmills.

85.     Plaintiff and the Class would not have purchased the Treadmills absent Defendant's representations that the Treadmills would operate at 2.6 CHP and above or would have paid substantially less for the Treadmills.

86.     Defendant breached these express warranties because the Treadmills cannot reach the claimed horsepower even under ideal conditions during household operation, and certainly not during any usage time material to consumer use.

87.     At the time the Treadmills were sold, Defendant knew that the written affirmation of facts or written promises regarding the level of horsepower were false.

88.     Defendant's breach of promises and warranties by failing to provide goods conforming to the promised product specifications directly and proximately injured Plaintiff and the Class, by providing them with non-conforming Treadmills and creating an artificially inflated price for those Treadmills.

89.     Plaintiff provided Defendant with notice and an opportunity to cure more than 30 days before the filing of this Lawsuit.

90.     Defendant's breach of the promises and warranties entitles Plaintiff and the Class to: (a) damages, in an amount to be determined at trial, and (b) an order requiring future representations to conform with the Treadmills' actual performance in the type of use for which they are intended.

**COUNT 2**
**Breach of Express Warranty — Magnuson-Moss Warranty Act**
**(on behalf of the Nationwide Class)**

91.     Plaintiff realleges and incorporates all other allegations in this Complaint.

92.     The Treadmills are consumer products as defined in 15 U.S.C. § 2301(1).

93.     Plaintiff and the Class members are consumers as defined in 15 U.S.C. § 2301(3).

94.     Defendant is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

95.     Defendant provided Plaintiff and Class members "written warranties" within the meaning of 15 U.S.C. § 2301(6).

96.     Jurisdiction under the Magnuson-Moss Warranty Act is satisfied because Plaintiff properly invoked the jurisdiction of this Court under CAFA.

97.     15 U.S.C. § 2310(d) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written warranty.

98.     Defendant made written warranties regarding the Treadmills to Plaintiff and Class members within the meaning of 15 U.S.C. § 2301(6) (hereinafter, "written warranties" or "express warranties").

99.     Defendant breached express warranties made to Plaintiff and the Class members.

100.    Defendant promised, affirmed, and expressly warranted that the Treadmills had 2.6 CHP or higher. In other words, Defendant expressly warranted to Plaintiff and Class members that the Treadmills would meet a level of performance, or power output, associated with a 2.6 CHP or

higher horsepower treadmill motor, for 10 or 15 years because Defendant promises a 10 or 15-year warranty, depending on the Treadmill model, for the motor drive.

101.     The Treadmills' product packaging exemplifies Defendant's express warranty that the Treadmills produce 2.6 CHP or higher for 10 or 15 years. Indeed, the front of the product packaging includes a picture of the Treadmills, a representation about the CHP capacity (2.6 or higher), and a statement indicating a 10 or 15-year warranty on the motor. The Treadmills are warranted to produce 2.6 CHP or higher for at least the duration of the warranty during household usage.

102.     Defendant's horsepower warranties became part of the basis of the bargain for Plaintiff and other Class members because they reviewed and considered such statements in deciding to purchase the Treadmills, and because such statements are among the facts a reasonable consumer would consider material in the purchase of a high-end treadmill.

103.     Plaintiff reviewed and considered Defendant's representations about the Treadmills producing at least 2.6 CHP before purchasing the Treadmills. But for Defendant's representations about the Treadmills' horsepower capabilities, Plaintiff would not have purchased the Treadmill or would have paid substantially less for the Treadmill.

104.     Defendant breached its horsepower warranties by delivering Treadmills that do not—and indeed cannot—provide the power and performance of a 2.6 CHP or higher treadmill during household usage for 10 to 15 years, varying by Treadmill model.

105.     At the time the Treadmills were sold, Defendant knew that the affirmations of fact or written promises they made regarding horsepower were false and were offered with no intention or capability of honoring them.

106. Plaintiff provided Defendant with notice and an opportunity to cure more than 30 days before the filing of this Lawsuit.

107. As a direct and proximate result of Defendant's breach of its express written warranties regarding the horsepower representations, Plaintiff and the Class members have been damaged in an amount to be proven at trial.

108. In addition, under 15 U.S.C. § 2310(d)(2), Plaintiff and the other Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiff and the other Class members in connection with the commencement and prosecution of this action.

109. Furthermore, Plaintiff and the Class are also entitled to equitable relief under 15 U.S.C. § 2310(d) and damages as a result of Defendant's violation of its written warranties.

## COUNT 3
### Breach of Express Warranty
### (on behalf of the Ohio Class)

110. Plaintiff restates and incorporates all other allegations in this Complaint.

111. Defendant represented that the Treadmills had certain horsepower specifications on the Treadmills' packaging, on its website, and on point of sale materials used for display and sale of the Treadmills, as noted herein, which Plaintiff and the Ohio Class reviewed and considered before purchasing their Treadmills. Defendant warranted that the Treadmills would perform as advertised with a 10 or 15-year warranty on the motor producing the stated CHP.

112. As detailed above, these representations are false and/or misleading, and the Treadmills Plaintiff and the Ohio Class purchased do not conform to the above-noted horsepower representations and cannot operate as promised during household operation.

113.    These representations constitute express warranties as to the Treadmills' qualities, nature, and performance.

114.    These representations became part of the basis of the bargain for Plaintiff and the Ohio Class members because they reviewed and considered such statements in deciding to purchase the Treadmills and because such statements are among the facts a reasonable consumer would consider material in the purchase of a high-end treadmill.

115.    Plaintiff and the Ohio Class would not have purchased the Treadmills absent Defendant's representations about the Treadmills producing 2.6 CHP or higher or would have paid substantially less for the Treadmills.

116.    Defendant breached these express warranties because the Treadmills cannot reach the claimed CHP during household use and are incapable of reaching 2.6 CHP or above even in peak laboratory testing conditions.

117.    At the time the Treadmills were sold, Defendant knew that the written affirmation of facts or written promises regarding the level of horsepower over a useful amount of time were false.

118.    Defendant's breach of promises and warranties by failing to provide goods conforming to the promised product specifications directly and proximately injured Ohio Plaintiff and the Ohio Class, by providing them with non-conforming Treadmills and creating an artificially inflated price for those Treadmills.

119.    Plaintiff provided Defendant with reasonable notice and the opportunity to cure before the filing of this lawsuit.

120.    Defendant's breach of the promises and warranties entitles Plaintiff and the Ohio Class to: (a) damages, in an amount to be determined at trial, and (b) an order requiring future

representations to conform with the Treadmills' actual performance in the type of use for which they are intended.

## COUNT 4
### Breach of Implied Warranty
### (on behalf of the Nationwide Class)

121.    Plaintiff restates and incorporates all other allegations in this Complaint as though fully pled herein.

122.    The laws governing the sale of goods imply a warranty that the goods conform to the representations and specifications suppliers/merchants supply for the goods and are fit for the purposes underlying the goods' sale.

123.    The purpose of these warranties is to protect consumers, and consumers are the intended beneficiaries of those warranties, as the representations are made to facilitate Defendant's Treadmill sales by creating consumer demand and consumer purchases.

124.    The Treadmills are consumer goods.

125.    Defendant breached these implied contractual provisions because the Treadmills cannot perform as Defendant promised.

126.    Defendant cannot provide a remedy or provide conforming goods because motors useable in the Treadmills inherently cannot provide the represented power in ordinary, sustained operation.

127.    Defendant's breach of the implied warranty of merchantability injured the Plaintiff and the Class by providing Treadmills that could not do the work as warranted and caused Plaintiff and the Class to pay a premium price for the Treadmills.

128.    Defendant's actions breach implied warranties due consumers.

129.    Plaintiff provided Defendant with written notice of the breach of warranty and an opportunity to cure more than 30 days before filing the complaint.

130.    Defendant's breach entitles Plaintiff and the Class to: (a) damages, in an amount to be determined at trial, and (b) an order requiring future representations to conform with the Treadmills' actual performance in the type of use for which they are intended.

### COUNT 5
**Breach of Implied Warranty — Magnuson-Moss Warranty Act**
**(on behalf of the Nationwide Class)**

131.    Plaintiff restates and incorporates all other allegations in this Complaint.

132.    The Treadmills are consumer products within the meaning of 15 U.S.C. § 2301(1).

133.    Plaintiff and the Class members are consumers within the meaning of 15 U.S.C. § 2301(3) because they are persons entitled under applicable state laws to enforce against the warrantor the obligations of its express and implied warranties.

134.    Defendant is and was a supplier of consumer products and warrantors within the meaning of 15 U.S.C. §§2301(4) and (5).

135.    Jurisdiction under the Magnuson-Moss Warranty Act is satisfied because Plaintiff properly invoked the jurisdiction of this Court under CAFA.

136.    15 U.S.C. § 2310(d) provides a cause of action to any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

137.    Defendant made implied warranties regarding the Treadmills to Plaintiff and Class members within the meaning of 15 U.S.C. § 2301(7). Defendant provided Plaintiff and other Class members an implied warranty of merchantability within the meaning of 15 U.S.C. § 2301(7).

138.    Defendant breached the implied warranty of merchantability because the Treadmills do not—and cannot—perform to the ordinary standard of use of a 2.6 CHP or higher

treadmill during household operation. Specifically, the Treadmills do not—and cannot—produce the power expected of a 2.6 CHP or higher treadmill during ordinary household use.

139. Pursuant to 15 U.S.C. § 2310(e), Plaintiff is entitled to bring this class action and is not required to give Defendant notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiff pursuant to Rule 23 of the Federal Rules of Civil Procedure.

140. As a direct and proximate result of Defendant's breach of the warranties regarding the CHP representations, Plaintiff, individually and on behalf of all other Class members, has been damaged. In addition, under 15 U.S.C. § 2310(d)(2), Plaintiff and the other Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiff and the other Class members in connection with the commencement and prosecution of this action.

141. Furthermore, Plaintiff and the Class are also entitled to equitable relief under 15 U.S.C. § 2310(d) and damages as a result of Defendant's violation of its implied warranties.

**COUNT 6**
**Violation of Ohio Consumer Sales Practices Act; Ohio Revised Code § 1345.01 *et seq*.**
**(on behalf of the Ohio Class)**

142. Plaintiff restates and incorporates all other allegations in this Complaint as though fully pled herein.

143. Defendant is a supplier within the definition of the Ohio Consumer Sales Practices Act, R.C. 1345.01 *et seq*. ("CSPA"), as it supplied and manufactured the Treadmills Plaintiff and members of the Ohio Class purchased for household use.

144. Plaintiff and the Ohio Class's purchase of the Treadmills were consumer transactions as that term is defined in the CSPA because Plaintiff and the Ohio Class purchased the Treadmills for household use.

145. Plaintiff and the members of the Ohio Class are consumers as defined in the CSPA because they engaged in a consumer transaction when purchasing the Treadmills.

146. Defendant's acts as described throughout the Complaint, including its misleading horsepower statements in point of sale materials, on its website and on the actual Treadmills, constitute unfair, deceptive, and unconscionable acts and practices in violation of the CSPA.

147. For example, the CSPA notes that it is deceptive for Defendant to state that the Treadmills "ha[ve] sponsorship, approval, performance characteristics, accessories, uses, or benefits that [they] do not have," that the Treadmills have "been supplied in accordance with a previous representation, if [they have] not," or that "a consumer transaction involves or does not involve a warranty, a disclaimer of warranties or other rights, remedies, or obligations if the representation is false." R.C. 1345.02(B)(1), (5), and (10).

148. But for Defendant's misleading statements about the Treadmills containing 2.6 CHP or more, Plaintiff and the Ohio Class would not have purchased their Treadmills or would have paid substantially less for the Treadmills.

149. Defendant places CHP ratings on the Treadmills' point of sale materials supplied to retailers, like Dick's Sporting Goods and online advertisements on Defendant's website.

150. The CHP promises and representations are misleading and deceptive for the reasons discussed throughout the Complaint.

151. For example, Defendant violated R.C. 1345.02(B)(5) when Defendant represented that the Treadmills were supplied in accordance with its previous representation that the Treadmills

were capable of 2.6 CHP or higher, when in fact it was impossible for the Treadmills to reach 2.6 CHP or higher during the Treadmills' intended household use.

152.     Defendant's representations regarding the Treadmills' CHP are material to a reasonable consumer and were designed to affect consumer decisions and conduct.

153.     Defendant understood and intended that the representations about the Treadmills' horsepower would influence consumer behavior.

154.     Defendant understands it has an obligation to ensure the honesty of all promotions and avoid misleading the public regarding its Treadmills.

155.     Defendant's acts and practices offend public policy as established by statute.

156.     Defendant's acts and practices are immoral, unethical, oppressive, and unscrupulous.

157.     Defendant's conduct substantially injured Plaintiff and the Ohio Class. Plaintiff, Ohio Class members and other consumers would not have paid the prices they paid absent Defendant's false and misleading horsepower representations or would have paid substantially less for the Treadmills.

158.     Defendant's actions caused consumers to overpay for the Treadmills. These injuries are not outweighed by any countervailing benefits to consumers or competition. No legally cognizable benefit to consumers or competition results from Defendant's misconduct.

159.     Defendant's actions involved information material to Treadmill purchases. The misleading nature of the promises or affirmations at the point of sale, online, on the actual Treadmills and other similar representations, and the failure to include necessary explanatory information regarding such representations, were material to the price at which consumers purchased the Treadmills.

160. Because the representations about treadmill power involve technical information that an ordinary consumer could not readily test, consumers could not have reasonably avoided the losses caused by misrepresentations forming the basis for the Treadmills' price.

161. The foregoing unfair and deceptive practices directly, foreseeably, and proximately caused Plaintiff and the Ohio Class to suffer an ascertainable loss when they paid a premium for the Treadmills above and beyond what they would have paid, and provided Defendant more in revenues for the Treadmills than it could have received absent its false and misleading representations.

162. Defendant was on notice before the filing of this suit that its conduct in misleading consumers about the Treadmills' characteristics was a violation of the CSPA.

    a. *Lyons v. Brown*, Hamilton C.P. No. A-742156, Ohio Attorney General Public Inspection File ("PIF") No. 10000304 (Nov. 5, 1979); 332 N.E.2d 380, 384 (1974) (concluding that defendant violated the Ohio Act by misleading consumers about the quality of products).

    b. *Brown v. Spears*, Warren M.C. No. 8897, PIF No. 10000403 (May 1, 1981); 1979 WL 52451, *2 (Aug. 20., 1979) (court found "as a matter of law, that where a defendant supplier violates 15 U.S.C §2303, his act in so doing is inherently and necessarily a violation of O.R.C. 1345.02(A).").

    c. *Cartwright v. Beverly Hills Floors, Inc.*, 7th Dist. Mahoning No. 11 MA 109, PIF No. 10003088 (June 6, 2013); 2013-Ohio-2266, at ¶ 17 (when manufacturer "knowingly commits a breach, the breach is likely also an unfair and deceptive act.").

163. Defendant was also on notice before the filing of this suit that its conduct in misleading consumers about the Treadmills' characteristics was a violation of the CSPA because the actions taken by Defendant are "an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 of the [Ohio] Revised code before the consumer transaction on which [this] action is based." Ohio Revised Code § 1345.09(B). Specifically, Ohio Administrative Code § 109:4-3-02(A)(1) states:

> It is a deceptive act or practice in connection with a consumer transaction for a supplier, in the sale or offering for sale of goods or services, to make any offer in written or printed advertising or promotional literature without stating clearly and conspicuously in close proximity to the words stating the offer any material exclusions, reservations, limitations, modifications, or conditions. Disclosure shall be easily legible to anyone reading the advertising or promotional literature and shall be sufficiently specific so as to leave no reasonable probability that the terms of the offer might be misunderstood.

164. Plaintiff and the Ohio Class are entitled to recover damages and other appropriate relief, as alleged below.

## COUNT 7
### Negligent Misrepresentation
### (on behalf of the Ohio Class)

165. Plaintiff restates and incorporates all other allegations in this Complaint as though fully pled herein.

166. In the course of business, Defendant misrepresented that the Treadmills maintain a continuous horsepower output which they do not possess. Defendant had a duty to disclose the truthful continuous horsepower capabilities rather than the misrepresented information.

167. Defendant supplied the Plaintiff and Ohio Class members false and misleading information, which a reasonable consumer would have used as guidance in evaluating the Treadmills capabilities.

168.     At the time Defendant made these misrepresentations, Defendant knew or should have known that these continuous horsepower representations were false or made them without knowledge of their truth or veracity.

169.     Defendant negligently misrepresented and/or at a minimum, negligently omitted material facts concerning the Treadmills' power representations, namely their true continuous horsepower capabilities while in operating use.

170.     The misrepresentations and omissions made by Defendant, upon which Plaintiff and Ohio Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase the Treadmills.

171.     Plaintiff and Ohio Class members would not have purchased the Treadmills or would have paid considerably less, if the true facts concerning the continuous horsepower claims had been known.

172.     Defendant's deceitful actions have caused damage to Plaintiff and Ohio Class members, who are entitled to damages and other legal and equitable relief as a result.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, respectfully requests that this Court:

1. Certify the proposed Class and Subclass and appoint Plaintiff and his legal counsel to represent the Class and Subclass;

2. Find in favor of Plaintiff, the Class, and the Subclass on all counts asserted herein;

3. Declare that Defendant's conduct violated the laws referenced herein;

4. Award Damages, including compensatory, exemplary, and statutory to Plaintiff, the Class, and the Subclass in an amount to be determined at trial;

5. Grant restitution to Plaintiff, the Class, and the Subclass and require Defendant to disgorge its ill-gotten gains;

6. Award Plaintiff, the Class, and the Subclass punitive damages in an amount to be determined at trial;

7. Award Plaintiff, the Class, and the Subclass reasonable attorneys' fees and the costs and disbursements of this suit incurred herein;

8. Enjoin Defendant from future misrepresentations regarding the horsepower of its Treadmills;

9. Declare the parties' rights and obligations under the warranties applicable to the Treadmill sales and under the law of the relevant state;

10. Award Plaintiff, the Class, and the Subclass pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and,

11. Order any such other and further relief the Court deems just and equitable.

### DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of all issues so triable.

Respectfully submitted,

*/s/ Terence R. Coates*
Terence R. Coates (0085579)
Trial Attorney
W.B. Markovits (0018514)
Justin C. Walker (080001)
Zachary C Schaengold (0090953)
MARKOVITS, STOCK & DEMARCO, LLC
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Phone: (513) 651-3700
Fax: (513) 665-0219
*bmarkovits@msdlegal.com*
*tcoates@msdlegal.com*
*jwalker@msdlegal.com*

*zschaengold@msdlegal.com*

Nathan D. Prosser (*pro hac vice forthcoming*)
Hᴇʟʟᴍᴜᴛʜ & Jᴏʜɴsᴏɴ, PLLC
8050 West 78th Street
Edina. MN 55439
Telephone: (952) 941-4005
Fax: (952) 941-2337
*nprosser@hjlawfirm.com*

Bryan L. Bleichner (*pro hac vice forthcoming*)
Jeffrey D. Bores (*pro hac vice forthcoming)*
Cʜᴇsᴛɴᴜᴛ Cᴀᴍʙʀᴏɴɴᴇ, PA
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Telephone: (612) 339-7300
Fax: (612) 336-2940
*bbleichner@chestnutcambronne.com*
*jbores@chestnutcambronne.com*

*Counsel for Plaintiff, the Class, and the Subclass*