UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ROBERT WALKER,**

    **Plaintiff,**

v.

**NAUTILUS, INC.,**

    **Defendant.**

Case No. 2:20-cv-3414
Judge Edmund A. Sargus, Jr.
Chief Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

The matter before the Court is Defendant Nautilus, Inc.'s Motion to Compel Arbitration, or in the Alternative, to Dismiss and/or Strike. (ECF No. 13). At this juncture, this Court addresses Nautilus' Motion to Compel Arbitration only. Nautilus' alternative motions will be addressed in a separate Opinion and Order. For the reasons stated below, the Court **DENIES** Nautilus' Motion to Compel Arbitration. (ECF No. 13).

### I.

When considering a motion to compel arbitration the Court may consider both the pleadings and additional evidence submitted by the parties. *See Anderson v. Delta Funding Corp.*, 316 F. Supp. 2d 554, 558 (N.D. Ohio 2004); *see also Jones v. U-Haul Co. of Mass. & Ohio*, 16 F. Supp. 3d 922, 930 (S.D. Ohio 2014). The facts relevant to this motion as laid out in the pleadings and the documents submitted by the parties are as follows.

Walker purchased a Bowflex treadmill from Nautilus.[1] (*See* Compl. at ¶ 19, ECF No. 1). Walker purchased the treadmill online on March 4, 2019 at a cost of approximately $1,500 and

---

[1] Nautilus' products are sold under brand names including Nautilus, Bowflex, and Schwinn. (Compl. at ¶ 22).

1

had it shipped to his home in Bellefontaine, Ohio. (*See id.* at ¶¶ 19–20). Allegedly, Walker has not received the continuous horsepower marketed and advertised by Nautilus. (*Id*. at ¶¶ 1, 29–34).

Walker filed a Complaint against Nautilus on July 7, 2020, on behalf of himself and a proposed class, alleging breach of express and implied warranties, (*Id.* at PageID 25–32), violation of the Ohio Consumer Sales Practices Act (*Id.* at PageID 33), and Negligent Misrepresentation. (*Id.* at PageID 37). Nautilus then filed the instant Motion, seeking primarily to compel arbitration, and alternatively to dismiss or strike. (ECF No. 13).

At the very bottom of the Bowflex website, in small gray font, read the words "Terms of Use." (Pl. Ex. A, ECF No. 14-3, PageID 138). When Walker purchased the Bowflex treadmill he did not see or click on these "Terms of Use," (Walker Decl. at ¶ 4, ECF No. 14-1), but if he had he would have been taken via hyperlink to a document which, if printed, amounts to thirteen pages (Pl. Ex. A, ECF No. 14-4). After reaching the eleventh page of that document, a user would come upon an arbitration provision. (*Id.* at PageID 150–51). The arbitration provision spans five paragraphs. (*Id.*)

The arbitration provision covers virtually all claims that relate in any way to Nautilus' "Service, your participation in any of the features available through them and/or your purchase of any products, content or services . . . ." (*Id.* at PageID 150). The provision continues that the parties "expressly waive the ability to participate in a class or representative proceeding, including any class arbitration or representative proceedings." (*Id.*) By default, the arbitration would occur in Clark County, Washington. (*Id.* at PageID 151). And, both parties would bear their own expenses, while "shar[ing] equally the costs of the arbitration . . . ." (*Id.*) The arbitration provision does allow for opting out, but only by writing to a listed address "no later than 60 days after initial acceptance

of these Terms." (*Id.*) Finally, the arbitration provision provides that it "survives" any termination of the "Terms." (*Id.*)

Purchasing the Bowflex treadmill was not Walker's first interaction with Nautilus; he previously purchased a Bowflex elliptical in 2017, and in December 2018 Walker installed fitness apps including the "Max Intelligence" app ("the app"). (Walker Supp. Decl. II at ¶¶ 4–6, ECF No. 25-2; Lewis Decl. at ¶ 5, ECF No. 25-1; Pl. Ex. A & B, ECF No.25-1). Though Walker downloaded the app, he did not subscribe to, pay for, or use the app, and he later uninstalled it. (Walker Supp. Decl. II at ¶¶ 6, 9, ECF No. 25-2).

The app's "Terms of Use" include an arbitration provision identical to the arbitration provision hyperlinked to the Bowflex website. (Citti Decl. at ¶ 9, ECF No. 15-1; Def. Ex. 2, ECF No. 15-1). According to Nautilus, before using the app users are required to click "accept" affirming that they "agree to the Terms of Use and Privacy Policy" hyperlinked thereto. (Citti Decl. at ¶¶ 4–7, ECF No. 15-1). Nautilus' declarant did not affirmatively state whether the requirement to click "accept" has always been in place. (*See id.*)

According to Walker, users of the app may not have been required to accept any terms of use when Walker downloaded the app. Video from a developer's website shows that the prototypes did not include an "accept" button, (Markovits Decl. at ¶ 3, ECF No. 25-3) (website link omitted), and Walker does not recall clicking any "accept" button. (Walker Supp. Decl. II at ¶ 6, ECF No. 25-2). The app is currently on its twenty-first version and is now called the "JRNY" app. (Lewis Decl. at ¶ 11, ECF No. 25-1).[2]

---

[2] Nautilus made no reference to the app or the associated arbitration provision when it first filed its Motion, instead waiting until filing its reply to first mention the two. Walker moved to strike Nautilus' new argument related to the app. (ECF No. 17). Preferring to resolve disputes on the merits, the Court declined to strike Nautilus' new argument and instead allowed limited discovery and additional briefing by both parties. (ECF No. 23).

## II.

The Federal Arbitration Act ("FAA") provides that a party to an arbitration agreement who is aggrieved by another party's refusal to submit an arbitrable dispute to arbitration, may petition any federal district court which would otherwise have jurisdiction over the underlying matter in order to compel arbitration. 9 U.S.C. § 4. Under the FAA "[a] written provision in any . . . contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* § 2.

When considering a motion to compel arbitration under the FAA, the Court has four tasks: (1) "it must determine whether the parties agreed to arbitrate;" (2) "it must determine the scope of that agreement;" (3) "if federal statutory claims are asserted, it must consider whether Congress intended those claims to be non-arbitrable; and" (4) "if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

Congress' primary concern in passing the FAA "was to enforce private agreements into which parties had entered . . . ." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). To that end, courts are to "rigorously enforce" arbitration agreements. *Id.* However, before there can be rigorous enforcement there must have been an enforceable agreement. Arbitration agreements are on "an equal footing with other contracts" and like any other contract may be unenforceable based on any of the "generally applicable contract defenses, such as fraud, duress, or unconscionability . . . ." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quotation omitted). Federal courts apply state-law principles governing contract formation when deciding

whether parties agreed to arbitrate a matter. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

**III.**

The parties have not agreed whether Ohio or Washington law applies in this case, but they each refer to Ohio and Washington law in their briefs, and they agree that the choice of law does not change the outcome. (*See* Pl. Sur-Reply at 7, ECF No. 25; *see also* Def. Sur-Sur-Reply at 6, fn. 6, ECF No. 26). The Court agrees that here the result is the same under both Washington and Ohio law. The Court will analyze this case under Ohio law, but will refer also to Washington law.

**IV.**

**A. The Website**

Defendant Nautilus initially argues that the arbitration provision contained within the Bowflex website's "browsewrap"[3] terms of use is valid and enforceable, and that the Court should thus compel arbitration. (Mot. at 7, ECF No. 13, PageID 83). According to Nautilus, the Bowflex website's browsewrap terms of use are enforceable because they are, in Nautilus' view, "easily accessible" and "prominently displayed" on the website. (Mot. at 8, ECF No. 13). One of the "[e]ssential elements" of a contract is "mutual assent[.]" *Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002) (quotation omitted); *Keystone Land & Development Co. v. Xerox Corp.*, 94 P.3d 945, 949 (Wash. 2004). Walker contends that there was no mutual assent to the asserted terms of use, and no agreement formed. Walker submits that due to the inconspicuous nature of the website's browsewrap terms of use, he had neither actual nor constructive knowledge of their existence and

---

[3] Browsewrap refers to terms and conditions attached to a website through a hyperlink that state they are accepted through one's use of the website without more. The user is not required to view and manifest assent to the contract; instead the "terms" are simply made available through the hyperlink. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014).

thus could not assent to them. The question is whether Walker and Nautilus agreed to arbitrate. The Court finds that they did not.

In determining the enforceability of browsewrap terms of use, "courts have focused on whether the website user has actual or constructive knowledge of a site's terms and conditions prior to using the site." *Snap-on Business Solutions v. O'Neil & Associates*, 708 F.Supp.2d 669, 681 (N.D. Ohio 2010) (quotations omitted). As Nautilus observes, courts have found that a website's users have constructive knowledge of browsewrap terms of use where the website host has placed notice of the terms "prominently" and provided "easy access" to the full terms. (Mot. at 8, ECF No. 13) (citing *Freeplay Music v. Dave Arbogast Buick-GMC*, 2019 U.S. Dist. LEXIS 163383 at *30 (S.D. Ohio 2019); *Snap-on Business Solutions*, 708 F.Supp.2d at 682).

Courts have refused to enforce browsewrap terms of use where the website's users were required to scroll down the webpage to discover the terms. *Specht v. Netscape Communications Corp.*, 306 F.3d 17, 20 (2nd Cir. 2002) (Sotomayor, J.); *see also Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1178–79 (9th Cir. 2014); *Wilson v. Playtika, Ltd.*, 349 F. Supp. 3d 1028, 1038 (W.D. Wash. 2018). In *Specht*, the Second Circuit reasoned that the "reasonably prudent internet user" would not have learned of the terms before downloading software from the website and was not provided "reasonable notice" of the terms. *Specht*, 306 F.3d at 20. There, the plaintiffs' act of downloading software thus "did not unambiguously manifest assent to the arbitration provision contained in the license terms." *Id.*

Here, rather than being prominently displayed, the terms of use are inconspicuous. And, due to their inconspicuous nature, they also are not easily accessible. The "Terms of Use" hyperlink appears in small, faint gray letters at the bottom of the webpage—barely legible. (Pl. Ex. A, ECF No. 14-3, PageID 138). The hyperlink is below four columns titled "Purchasing Info,"

"Customer Support," "Product Info & Support," and "Connect with Us," with a total of 22 bolded hyperlinks in more prominent black under those titles. (*Id.*) The webpages are long as well, and a user viewing the treadmill webpage would have to scroll the equivalent of eight pages to reach the "Terms of Use." (*Id.* at PageID 131–38; Markovits Decl. at ¶ 2, ECF No. 14-2). A reasonably prudent internet user would not have learned of these terms of use before purchasing fitness equipment on the Bowflex website.

The Court finds that Walker did not assent to the browsewrap terms of use, including the arbitration provision, hyperlinked to the Bowflex website. Accordingly, the Court cannot enforce that arbitration provision in this case. Because the Court has concluded that there was no agreement to arbitrate, the Court need not address Walker's alternative arguments.

**B. The Max Intelligence App**

Nautilus next argues that this Court should compel arbitration in this case through another arbitration provision, this one found in the terms of use of one of Nautilus' apps. (Def. Reply at 1, ECF No. 15). Walker responds that the arbitration clause from the terms of the app cannot be enforced to compel arbitration in this case because to do so would be unconscionable; the Court agrees. To require arbitration here under a provision in the Terms of Use from an unrelated app that was downloaded but not used, given the totality of circumstances, would be unconscionable under either Washington or Ohio law.

Under Ohio law, a contract or arbitration provision is unenforceable if it is substantively and procedurally unconscionable.[4] *See Hayes v. Oakridge Home*, 908 N.E.2d 408, 412 (2009). "The party asserting unconscionability of a contract bears the burden of proving that the agreement

---

[4] Under Washington law, a contract may be invalidated for either procedural unconscionability or substantive unconscionability. *Luna v. Household Fin. Corp. III*, 236 F. Supp. 2d 1166, 1174 (W.D. Wash. 2002); *see also McKee v. AT&T Corp.*, 191 P.3d 845, 847 (Wash. 2008).

is both procedurally and substantively unconscionable." *Id.* Substantive unconscionability involves unfair and unreasonable contract terms, while procedural unconscionability involves individualized circumstances surrounding the parties that make any meeting of the minds involuntary. *See Ahmmad v. Admed*, 38 N.E.3d 434, 444 (Ohio Ct. App. 2015). Put another way, "Unconscionability includes both an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Hayes*, 908 N.E.2d at 412; *see also Satomi Owners Ass'n v. Satomi, LLC*, 225 P.3d 213, 232 (Wash. 2009) ("Procedural unconscionability is the lack of meaningful choice"); *McKee v. AT&T Corp.*, 191 P.3d 845, 847 (Wash. 2008) ("Substantive unconscionability involves those cases where a clause or term in the contract is one-sided or overly harsh.").

In determining whether an arbitration provision is procedurally unconscionable, courts may consider the attendant facts and circumstances in the record. *See Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 866–67 (Ohio 1998); *see also Satomi Owners Ass'n*, 225 P.3d at 232 (Procedural unconscionability takes into account "all the circumstances surrounding the transaction including . . . whether the important terms were hidden in a maze of fine print.") (quotations omitted). Circumstances to consider include, for instance, whether the terms were explained to the weaker party. *Cross v. Carnes*, 724 N.E.2d 828, 837 (Ohio Ct. App. 1998). Circumstances also include the relative bargaining position of the parties, whether the contract is one of adhesion, the availability of competing goods or services, and who drafted the contract. *Hayes*, 908 N.E.2d at 413.

The focus of substantive unconscionability is on whether terms are fair and reasonable. *See Collins v. Click Camera & Video*, 621 N.E.2d 1294, 1299 (Ohio Ct. App. 1993) (unfair and unreasonable contract terms are substantively unconscionable). Courts have found substantive

unconscionability where "the costs associated with the arbitration effectively deny a claimant the right to a hearing or an adequate remedy in an efficient and cost-effective manner[.]" *Felix v. Ganley Chevrolet, Inc.*, 2006-Ohio-4500 at ¶ 21 (Ohio Ct. App. 2006); *see also Williams*, 700 N.E.2d at 866–67 (finding unconscionability after looking unfavorably on an arbitration provision that was cost-ineffective); *Mendez v. Palm Harbor Homes, Inc.*, 45 P.3d 594, 605 (Wash. Ct. App. 2002).

Given the circumstances of this case, the arbitration provision is procedurally unconscionable. The Max Intelligence app's terms of use bear the hallmarks of an adhesion contract, and the binary "accept" or "reject" options associated with using the app indicate that the terms set by Nautilus are non-negotiable. Moreover, Nautilus did not explain the arbitration provision to Walker or require Walker to view the agreement before proceeding. (*See* Walker Decl. at ¶¶ 12–13, ECF No.25-2). Instead Nautilus buried the provision on pages 11 and 12 of its terms of use.[5] (Def. Ex. 2, ECF No. 15-1 at PageID 190–91). The arbitration provision does contain a sixty day opt-out window. (*Id.* at PageID 191). However, because the arbitration provision covered *all* future product purchases and not just use of the Max Intelligence app, the sixty-day window closed before Walker purchased the treadmill at issue in this case. Setting up an opt-out provision in this manner limits its significance, and here that significance is outweighed.

The arbitration provision is also substantively unconscionable. According to Nautilus, when Walker downloaded the app, he agreed to arbitrate any issue relating to any of Nautilus' numerous products and services in perpetuity. Nautilus could discontinue the app and could have terminated Walker's use at its discretion, yet according to the terms of use the arbitration provision

---

[5] Though the arbitration provision is listed as page 11 and 12 of Nautilus' Exhibit 2 (ECF No. 15-1), the record does not reveal how far users of the Max Intelligence app would have to scroll to reach the arbitration provision on a smart phone, such as Walker's iPhone 8+. (*See* Lewis Decl. at ¶ 3, ECF No. 25-1) ("I inspected an iPhone 8+ owned by Robert Walker").

survives that termination. (Def. Ex. 2, ECF No. 15-1, PageID 181, 191–92). Nautilus contends that Walker's later purchase of a treadmill was covered by the arbitration provision in that app. A reasonably prudent consumer would not expect this. And, this term is unreasonably favorable to Nautilus. It would require arbitration not just for claims related to the app, but for all claims related to any of Nautilus' products and services, apparently including those under the Nautilus, Schwinn, and Bowflex brand names—all just to use an app.

In addition, Nautilus' arbitration provision is substantively unconscionable because it effectively denies Walker "the right to a hearing or an adequate remedy in an efficient and cost-effective manner[.]" *Felix*, 2006-Ohio-4500 at ¶ 21; *see also Williams*, 700 N.E.2d at 866–67; *Mendez*, 45 P.3d at 605. The arbitration provision requires consumers to arbitrate in Clark County, Washington, it requires consumers to be responsible for their own expenses, and it requires them to split any costs and fees. The effect, especially combined with the class action waiver, is to economically preclude individual consumers from vindicating their rights.

In this case, which involves a treadmill costing less than $2,000, it would be economically irrational for Walker to arbitrate his claim in Clark County, Washington. Assuming an outcome in favor of Walker, the arbitration fees and costs alone would be liable to exceed any damages award. (Supp. Walker Decl. II at ¶ 14, ECF No. 25-2; Markovits Decl. at ¶ 4, ECF No. 25-3).

Accordingly, the Court finds that the app's arbitration provision is both procedurally and substantively unconscionable. The Court need not address Walker's alternative arguments. Because the arbitration provision associated with the app is unconscionable it cannot be used to compel arbitration here.[6]

---

[6] In a parenthetical within Nautilus' sur-sur-reply, Nautilus suggests that "[t]o the extent the Court finds any cost-splitting arrangement a potential bar to arbitration, the proper remedy is to sever that provision from the arbitration agreement and nevertheless compel arbitration." (Def. Sur-Sur-Reply at 8, ECF No. 26). "'Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed

## V.

For the reasons stated above, Defendant Nautilus' Motion to Compel Arbitration is **DENIED**. (ECF No. 13). Nautilus moved alternatively to dismiss or strike, which this Court will address in a separate Opinion and Order.

**IT IS SO ORDERED.**


**5/28/2021**                                          **s/Edmund A. Sargus, Jr.**
**DATE**                                                **EDMUND A. SARGUS, JR.**
                                                        **UNITED STATES DISTRICT JUDGE**

---

argumentation, are deemed [forfeited]' and 'it is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.'" *United States v. Brown*, 819 F.3d 800, 829 (6th Cir. 2016) (quoting *United States v. Robinson*, 390 F.3d 853, 886 (6th Cir. 2004)). Even assuming Nautilus sufficiently addressed the issue of severance, which it did not, this Court found that the arbitration provision was unconscionable based on more than just the cost-splitting arrangement.