UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **ROBERT WALKER**, on behalf of himself and all others similarly situated, | : : : **Case No. 2:20-cv-3414** |
| Plaintiff, | : **Judge Edmund A. Sargus Jr.** |
| v. | : **Magistrate Judge Elizabeth A. Preston Deavers** |
| **NAUTILUS, INC.,** | : |
| Defendant. | : |

**PLAINTIFF'S UNOPPOSED MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Pursuant to Fed. R. Civ. P. 23(e), Plaintiff Robert Walker, on behalf of himself and the Settlement Class[1] (collectively, "Plaintiffs"), respectfully moves this Court to enter the proposed Order attached as **Exhibit 1**. Per Local Rule 7.3, Class Counsel consulted with Defendant before filing this Motion and determined that this Motion is unopposed. The grounds for the Court's potential granting of this unopposed Motion are included in the accompanying Memorandum in Support of Final Approval of Class Action Settlement.

---

[1] Capitalized terms not defined herein are as stated in the Class Action Settlement Agreement and Release ("Agreement") dated November 5, 2021 (Doc. 39-2).

1

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

I.     **PRELIMINARY STATEMENT**

Plaintiff Walker respectfully requests that the Court grant final approval of the Settlement that it preliminarily approved on November 16, 2021. Plaintiff will not repeat at length but will summarize below the background and arguments that supported preliminary approval and now support final approval.[2] What has occurred since the grant of preliminary approval, however, is identified in more detail below and is a further demonstration of why the proposed Settlement is fair, reasonable, and adequate and should be given final approval. A dynamic and effective notice process has resulted in a substantial number of claims to date, with many more expected as the claims deadline approaches. In contrast, there have been no objections and a low number of opt outs. All of this speaks to the strength of the settlement and supports final approval.

II.     **FACTUAL BACKGROUND**

    A.     **Litigation and Settlement**

On July 7, 2020, Class Representative Robert Walker filed a complaint against Defendant Nautilus, Inc. alleging that Nautilus made misrepresentations regarding the horsepower attributes in the advertising, marketing and sale of its treadmills sold under the brand names Nautilus, Schwinn and Bowflex. (Doc. 1, Complaint). Plaintiff Walker and Class Counsel have thoroughly reviewed and analyzed this case, including but not limited through informal discovery, discussions with experts in electrical engineering and price premium damage analysis, and review of

---

[2] The detailed procedural background, along with facts and argument supporting certification and settlement, may be found in the preliminary approval filings of this docket. *See* Doc. 39 and accompanying exhibits.

applicable nationwide and Ohio law. Defendant Nautilus has denied, and continues to deny, Plaintiff's allegations in the complaint and denies any liability for any of the claims.

Following denial of Defendant's motion to compel arbitration before this Court, and while an appeal was pending in the Sixth Circuit on that issue, Sixth Circuit mediator John A. Minter scheduled a mediation conference. The Parties engaged in multiple arm's length mediation conferences under the guidance and supervision of Mr. Minter, beginning on June 28, 2021 and ending on September 8, 2021, as well as in continued email exchanges and discussions between formal mediation sessions.

On October 11, 2021, the Parties filed a joint motion for an indicative ruling asking whether the Court would evaluate a proposed settlement and conduct a fairness hearing. (Doc. 36). Following grant of this motion, on November 5, 2021, Plaintiff Robert Walker filed an unopposed motion for preliminary approval, supported in part with a settlement agreement between the parties effective as of that date. (Doc. 39). On November 16, 2021, this Court granted preliminary approval, initiating the notice and claims process to the Class. (Doc. 41).

**B.     Notice, Claims, Inquiries, Objections, Opt-Outs**

The Court-approved notice program that was implemented by settlement administrator, The Angeion Group ("Angeion"), was particularly robust for a consumer class action. This is in part because the Court issued an order requiring third-party retailers of Nautilus to produce customer contact information. (Doc. 42). In order to provide direct notice to as many Class Members as possible, the Parties worked together to identify the major retailers of Nautilus treadmills and jointly agreed to the contents of a cover letter that would accompany the written requests sent to those retailers for the purpose of collecting customer contact information. Copies of the joint letter, as well as the Court's November 16, 2021 order requiring third-party retailers to

produce customer information, were sent to the retailers in beginning on November 18, 2021 requesting the disclosure of the contact information. Declaration of W. B. Markovits ("Markovits Decl."), ¶ 10. To accommodate the receipt of class member information from Amazon, the notice deadline was extended from January 4, 2022 until January 31, 2022. (Doc. 45). Angeion used customer contact information from retailers and from Nautilus to send direct notice to 93,175 of the estimated 200,000 class members. Declaration of Denise Earle ("Earle Decl."), ¶ 5.

In addition to direct notice, Class Counsel and Angeion implemented a broad notice program that included: a custom social media campaign; a programmatic digital banner ads campaign; a settlement website with additional information, including frequently asked questions and important case documents; and a toll-free hotline. *Id*., ¶¶ 6-17.

The claims deadline is May 2, 2022, and there is generally a surge of claims surrounding the deadline date. *Id*., ¶ 18. But as of March 16, 2022 Angeion has already received 9,184 claims. *Id*., ¶ 18. This is an expected claims rate at this point in the claims period for a consumer class action of this nature. *Id*., ¶ 18.

Class Members have also demonstrated interest in the settlement through their inquiries and use of the settlement website. Angeion's dedicated toll-free hotline for Class Members has handled 136 inquiries as of March 16, 2022. *Id*., ¶ 18. Angeion has also responded to 184 email

inquiries. *Id.* The settlement website – www. nautilustreadmillsettlement.com – has received 45,908 hits on its webpages from 23,503 individual users. *Id*., ¶ 15.

The deadline for any objections to the Settlement or requests for exclusion is April 1, 2022. (Doc. 41). To date, there have been zero objections and 16 requests for exclusion. *Id*., ¶ 19. This is a low level of objections and opt outs at this point. *Id*.

**III.      ARGUMENT**

   **A. Final Class Certification for Settlement Purposes is Appropriate.**

This Court preliminarily approved class certification for Settlement purposes in its November 16, 2021 Order (Doc. 41). At this juncture, final approval is appropriate.

   1. <u>The Elements of Rule 23(a) are Satisfied.</u>

For a lawsuit to be maintained as a class action under Rule 23, the plaintiff must establish each of the four threshold requirements of Subsection (a) of the Rule, which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Here, all four elements are satisfied.

   *a. Numerosity*

Rule 23(a)(l) requires that plaintiff demonstrate that "the class is so numerous that joinder of all members is impracticable." While no specific number of class members is required to maintain a class action, "[w]hen class size reaches substantial proportions. . . the impracticability requirement is usually satisfied by the numbers alone." *In re Am. Med. Sys., Inc*., 75 F.3d 1069, 1079 (6th Cir. 1996) (citation omitted). Here, there are an estimated 200,000 Class Members, satisfying the numerosity requirement. Markovits Decl., ¶ 14.

### b. Commonality

Rule 23(a)(2) requires a showing of the existence of questions of law or fact common to the class. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). "Their claims must depend upon a common contention of such a nature that it is capable of classwide resolution- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350. Both the majority and dissenting opinions in that case agreed that "for purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 359.

In this case, there are numerous common questions of law and fact, such as whether the Treadmill horsepower claims are accurate, and whether the Class Members have actionable claims. Commonality is, therefore, satisfied.

### c. Typicality

In order to satisfy the typicality requirement of Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. "The typicality requirement ensures that the representative's interests will be aligned with those of the represented group and that the named plaintiff will also advance the interests of the class members." *Chesher v. Neyer*, 215 F.R.D. 544, 549 (S.D. Ohio 2003). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Id*. (citing 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions, § 3-13, at 3-76 (3d ed. 1992)); *see also Am. Med. Sys.*, 75 F.3d at 1082 (same).

Typicality seeks to ensure that there are no conflicts between the class representatives' claims and the claims of the class members represented. Here, Plaintiff's claims arise out of the same alleged conduct by Nautilus related to the sale and marketing of its Treadmills, in particular

6

with regard to horsepower representations, and the same legal theories apply to all. Typicality is satisfied.

### d. Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "There are two criteria for determining this element: 1) the representatives must have common interests with the unnamed class members, and 2) it must appear that the representatives will vigorously prosecute the class action through qualified counsel." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976).

Here, Plaintiff Walker is adequate because he has actively participated in the case, and during the Class Period he purchased a Treadmill that would be covered by the Settlement and was allegedly damaged in the same manner based on the same alleged treadmill horsepower misrepresentations. Class Counsel are qualified, possessing a wealth of experience in litigating complex class action lawsuits, which allowed them to negotiate an outstanding settlement for the Class. (See Markovits Decl. ¶ 5). The adequacy requirement is satisfied.

### 2. The Requirements of Rule 23(b)(3) are Met in the Settlement Context.

Plaintiff seeks to certify a Class under Rule 23(b)(3), which has two components: predominance and superiority. When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and a showing of manageability at trial is not required. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997). With respect to predominance, the Sixth Circuit has explained that "named plaintiffs must show, and district courts must find, that questions of law or fact common to members of the class predominate over any questions that affect only individual members." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 860 (6th Cir. 2013). With respect to

superiority, the Court considers whether a class action is "superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Here, there are several common questions of law and fact that predominate over any questions that may affect individual Class Members. For example, were this case to proceed, the primary issue would be whether Defendant misrepresented the horsepower of its Treadmills, and whether Defendant is liable as a result. A court within this District recently found that predominance was established the class certification stage in a very similar treadmill CHP misrepresentation case based on a price premium damages theory. *Bechtel v. Fitness Equipment Services, LLC*, 339 F.R.D. 462, 482 (S.D. Ohio 2021). In *Bechtel*, Chief Magistrate Judge Karen L. Litkovitz stated,

> Plaintiffs here offer evidence that none of the treadmills are able to obtain the represented CHP in household use because residential outlets cannot produce sufficient power to support that CHP regardless of the speed setting, weight of the treadmill user, or any other individual variable. As a result, treadmill purchasers allegedly overpaid for their treadmills, according to plaintiffs' economic expert. The determination of these issues will succeed or fail based on evidence common to the class. For these reasons, common issues predominate pursuant to Rule 23(b)(3).

*Id*.

Plaintiff would be able to show the same evidence in this case at class certification. Accordingly, predominance is met in this case.

The second prong of Rule 23(b)(3) — that a class action is superior to other available methods for the fair and efficient adjudication of the controversy — is also readily satisfied. *See* Fed. R. Civ. P. 23(b)(3). The settlement would relieve the substantial judicial burdens that would be caused by repeated adjudications in individual trials against Nautilus. *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2012); *see also Bechtel*, 339 F.R.D. at 485 (noting that

8

"a class action is the superior method for adjudicating" a similar treadmill CHP misrepresentation class action).

**B. The Notice Program Preliminary Approved by the Court Was the Best Notice Practicable Under the Circumstances, and Was Successful.**

In class actions certified under Federal Rule of Civil Procedure 23(b)(3), notice must meet the requirements of Rule 23(c)(2). The latter rule requires that notice to the class be the "best notice that is practicable under the circumstances." Rule 23(c)(2). *See In re Auto. Parts Antitrust Litig.*, No. 12-CV-00103, 2016 WL 8200511, at *10 (E.D. Mich. Aug. 9, 2016) (program satisfied Rule 23 and due process). The Court must consider the mode of dissemination and the content of the notice to assess whether such notice was sufficient. *See* Federal Judicial Center, Manual for Complex Litig. § 21.312 (4th Cir. 2004). There is no statutory or due-process requirement that all class members receive actual notice by mail or other means; rather, "individual notice must be provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacqueline,* 417 U.S. 156, 175 (1974). Rule 23(e) gives the Court "virtually complete" discretion as to the manner of service of settlement notice. *See Franks v. Kroger Co.*, 649 F.2d 1216, 1223-23 (6th Cir. 1981); *Vassalle v. Midland Funding, LLC*, No. 3:11-CV-00096, 2014 WL 5162380, at *11 (N.D. Ohio Oct. 14, 2014), *aff'd sub nom. Pelzer v. Vassalle*, 655 F. App'x 352 (6th Cir. 2016).

Class Counsel worked closely with the Settlement Administrator to develop and implement the notice program preliminarily approved by the Court. Markovits Dec.,¶ 12; Earle Dec., ¶ 3. The notice process was substantially improved through direct notice, made possible in large part by this Court's order requiring third-party retailers to provide customer contact information. (Doc. 42). Using customer contact information provided by Nautilus and its major third-party retailers, the Settlement Administrator was able to provide direct notice to 93,175 Class Members. Earle

Dec., ¶ 5. This process included removing duplicates and updating information, including through use of the USPS's National Change of Address database and skip-tracing. *Id*., ¶ 9. Any email notice that was undelivered was sent via regular mail to those Class Members with a mailing address. *Id*. Any mail notice that was returned with a forwarding address was remailed to the appropriate address. *Id*. Of the original 93,175 direct notices sent, the Settlement Administrator was unable to locate a valid mailing or email address for only four individuals. *Id*.

In addition to the direct notice plan, the Settlement Administrator also implemented an internet and social media campaign that included the establishment of a settlement website (www.nautilustreadmillsettlement.com) and targeted Facebook ads using the available Class Member data. *Id*., ¶¶ 11, 13. The website received 45,908 directed clicks and 23,503 overall visits as of March 16, 2022. *Id*. The targeted ads reached 516,153 individuals. *Id*.

The Settlement Administrator estimates that between direct notice and other forms of notice, the notice program reached over 90% of Class Members. Courts routinely approve direct notice plan that reach at least 70% of the Class. A notice reaching 70-95% of the class is often cited as meeting the requirements of Rule 23(c)(2)(B) and due process. Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, at 3 (2010), www.fjc.gov/sites/default/files/2012/NotCheck.pdf.

The notice program provided Class Members with a clear and concise statement of their rights under Rule 23(c)(2)(B). (Doc. 39-2). The notices directed Class Members to the Settlement Website or a toll-free number for additional information regarding how they could opt out of or object to the settlement. *Id*. The notice program meets the structures of Rule 23 and due process and should be approved by the Court.

### C. The Settlement Agreement Merits Final Approval

Pursuant to Rule 23(e), the Court may approve this Settlement if it determines that it is "fair, reasonable and adequate." The determination of whether to grant final approval for the Settlement is left to the sound discretion of the Court. *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 778 (N.D. Ohio 2010) (citing *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990)). The Sixth Circuit has identified the following factors when considering whether to finally approve a class action settlement: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013).

The 2018 amendments to Rule 23(e) also contain specific factors for federal courts to consider in determining whether a class action settlement is fair, reasonable and adequate. *See* Fed. R. Civ. P. 23(e)(2). These factors include:

A. Whether the class representatives and class counsel have adequately represented the class;

B. Whether the proposal was negotiated at arm's length;

C. Whether the relief provided for the class is adequate, taking into account: (i) the costs, risk, and delay of trial and appeal: (ii) the effectiveness of any proposed method of distributing relief to the class including the method of processing class members claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

D. Whether the proposal treads class members equitably.

*Id*. These amendments are not intended to displace the factors set forth in case law "but rather focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id*. at *Advisory Committee's Note to 2018*

*amendment*. Courts in this Circuit consider both sets of factors when assessing the reasonableness of a settlement and enjoy "wide discretion in assessing the weight and applicability of these factors." *Doe v. Ohio*, No. 2:91-cv-464, 2020 WL 728276, at * 3 (S.D. Ohio Feb. 12, 2020). All of the case law and 23(e) factors weigh in favor of granting final approval.

> 1. <u>The Settlement resulted from mediated, arm's length negotiations without any risk or evidence of fraud or collusion.</u>

Settlements resulting from arm's length negotiations conducted by court-approved counsel are presumptively reasonable. *See* 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions, § 11.41 at 90 (4th Ed. 2002). Courts presume the absence of fraud or collusion in settlement negotiations unless there is evidence to the contrary. *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1106 (S.D. Ohio 2001). Here, there is no such evidence.

This Settlement was the result of extensive, contentious, arm's length negotiations between counsel with many decades of experience in handling complex, class action litigation. Negotiations were arduous and lengthy, stretching over many months under the close supervision of Sixth Circuit mediator John Minter. Mr. Minter's participation in the Parties' negotiations alone establishes the lack of fraud or collusion in this case.[3] This factor strongly supports granting final approval.

---

[3] *See, e.g., Moran v. Wunderlich*, No. 3:05CV073, 2007 WL 3005235, at *2 (S.D. Ohio Oct. 12, 2007) (noting that settlement negotiations conducted by a federal magistrate judge were arm's length and without the risk of fraud or collusion); *In re Regions Morgan Keegan Secs.*, Nos. 2:09-2209SMH V, 2:07-cv-02830-SHM-dkv, 2013 WL 12110279, at *5 (W.D. Tenn. Aug. 6, 2013) (noting that "[t]he parties protected against the risk of fraud or collusion by using a highly qualified and experienced independent mediator during settlement negotiations.").

## 2. The complexity, expense, and likely duration of the litigation warrant final approval of the Settlement.

"Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 WL 3862363, at *16 (N.D. Ohio Sept. 1, 2011) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000)). "Thus, '[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Id.* (quoting 4 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 11.50 (4th ed. 2002)).[4] This case is no different in that it is a consumer class action and a settlement at this stage of the case will avoid the risk of "costs, delays, and multitude of other problems associated" with class action cases.

In the absence of settlement, Plaintiff's action would remain subject to Defendant's appeal of this Court's May 28, 2021 Order denying Nautilus's request to compel arbitration of this entire case. *Walker v. Nautilus, Inc.*, 541 F. Supp. 3d 836 (S.D. Ohio 2021). This case was pending on appeal with the Sixth Circuit Court of Appeals when the Parties' reached this settlement. Even if Defendant's appeal were unsuccessful the resulting litigation, including any further appeals, could take many years and involve substantial expense for all Parties. The uncertainty of continued litigation stands in stark contrast to the immediate relief offered by this Settlement. The Settlement provides Settlement Class Members with real benefits now without having to endure the risks, duration, and expense that would surely follow if this litigation were to continue. *See Bert v. AK*

---

[4] *See also Amos v. PPG Indus., Inc.*, No. 2:05-cv-70, 2015 WL 4881459, at *1 (S.D. Ohio Aug. 13, 2015) ("In general, most class actions are inherently complex, and settlement avoids the costs, delays, and multitude of other problems associated with them.") (internal citations and quotations omitted); *Miracle v. Bullitt Cnty., Ky.*, No. CIV.A. 05-130-C, 2008 WL 3850477, at *6 (W.D. Ky. Aug. 15, 2008) (The "uncertainty of the outcome of the litigation makes it more reasonable for the plaintiffs to accept the settlement offer from the defendant").

*Steel Corp.*, No. 1:02-cv-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("The Court has no doubt that the required trials or hearings would have been time consuming, and that a complete resolution of the case would not be reached for several more years. This factor clearly weighs in favor of the proposed settlement.").

      3. <u>Sufficient discovery was conducted in this case.</u>

The Parties have already engaged in sufficient discovery, which has included informal discovery relating to the number of Class Members, as well as Class Counsel consultation with experts in motor horsepower and conjoint analysis damages. This factor also lends support for granting final approval of the Settlement.

      4. <u>The likelihood of success balanced against the amount and form of relief offered by the settlement weigh in favor of approving the settlement.</u>

The Sixth Circuit has identified the likelihood of success on the merits as the most important of all the factors a district court must evaluate in assessing the fairness of a class action settlement. *Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*, 636 F.3d 235, 245 (6th Cir. 2011). A district court must weigh the likelihood that the class ultimately will prevail "against the amount and form of the relief offered in the settlement." *Carson v Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *see also In re Gen. Tire & Rubber*, 726 F.2d 1075, 1086 (6th Cir. 1984); *UAW v. Gen. Motors, Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

Although Plaintiff remains confident in his claims against Nautilus, he recognizes the substantial risks involved in establishing liability and damages in this case. From the outset of this litigation, Defendant has consistently maintained that the allegations in this action are without merit. Following appeal of the arbitration issue, even if remanded the Court could grant a motion to dismiss, or rule against Plaintiff later in this case on issues related to class certification or summary judgment. Furthermore, there is a risk that a jury might award little or nothing in the way

of damages. And even if Plaintiff prevailed on Defendant's motion to dismiss, class certification, summary judgment, and at trial, Plaintiff would still face the potential for prolonged appeals to the Sixth Circuit.

By contrast, the Settlement offers immediate, significant, and substantial relief to all Class Members who submit a claim. Generally, Class Members who purchased a Treadmill from July 7, 2016 through November 16, 2021 may receive: 1) a *pro rata* payment from a Common Fund of Four Million Two Hundred and Fifty Thousand Dollars ($4,250,000.00), after deductions for Attorneys' Fees and Expenses, administration and Notice Expenses, and a Service Award, if any; and 2) a year-long subscription, or subscription extension, to JRNY, a fitness app offered by Defendant. At the current claims rate each Class Member would receive a payment in excess of Two Hundred and Fifty Dollars ($250.00) from the Common Fund. Markovits Decl., ¶ 15. The year-long subscription, or subscription extension, to Defendant's JRNY app is currently valued at approximately One Hundred and Fifty Dollars ($150.00). There are currently 9,161 Class Members who claimed this benefit – a value of $1,339,200.00. In addition, Defendant has agreed to make significant changes to its sales and marketing of its Treadmills with respect to horsepower claims—the issue central to the Lawsuit. Defendant will cease using the terminology "Continuous Horsepower" or "CHP" to market or sell its Treadmills, and with respect to any horsepower claim will note that the stated horsepower is that obtained is based on the motor manufacturer's horsepower rating and does not reflect the operational horsepower of the treadmill in ordinary household use.

The Settlement delivers real value to Class Members. Under any analysis, the relief afforded by this Settlement is fair and reasonable, especially when weighed against the anticipated

15

cost, prolonged nature, and uncertain outcome of continued litigation. Thus, this factor too weighs in favor of granting final approval.

> 5. The fact that both Plaintiff's and Defendant's counsel, as well as Plaintiff, recommend approval of the Settlement strongly indicates that the Settlement is fair, reasonable, and adequate.

The Sixth Circuit has observed that, when experienced counsel immersed in the legal and factual issues comprising a class action recommend approval of their class settlement, their recommendations are entitled to deference. *See Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983) (a district court "should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs" and that deference "should correspond to the amount of discovery completed and the character of the evidence uncovered"). Likewise, courts in the Sixth Circuit defer to the recommendations made by a class representative who, like the Plaintiff here, was intimately involved in the litigation and supports the Settlement. *Gascho v. Global Fitness Holdings, LLC*, No. 2:11-cv-436, 2014 WL 1350509, at *18 (S.D. Ohio Apr. 4, 2014) ("Not insignificantly, the Class Representatives have also approved the Settlement Agreement").

Class Counsel and Plaintiff support this Settlement because it provides Class Members with immediate and substantial benefits that will directly address the issue of what they believe to be horsepower misrepresentations on the part of Nautilus. Defendant is also supportive of the Settlement, which was reached after more than a year of litigation and thorough settlement negotiations. As the result of informal discovery conducted and extensive settlement negotiations, the Parties are in a position to fully analyze the strengths and weaknesses of their respective cases and determine that the Settlement at this stage of the litigation is appropriate. Accordingly, the informed recommendations of the Parties and their experienced counsel weigh in favor a granting final approval.

6. The reactions of Class Members to date supports the Settlement.

The deadline for Class Members to object or opt out of the Settlement is April 1, 2022. Accordingly, Plaintiffs cannot yet fully assess the Class Members' reaction to the Settlement. After the April 1 deadline passes and before the Final Approval Hearing on June 21, 2022, Class Counsel will file a supplemental notice summarizing the number of claims, objections, and opt-outs received. As discussed above, however, to date the reaction of the absent Class Members is positive: there is a strong claims rate, with zero objections and 16 opt outs. This further supports final approval.

7. This Settlement serves the public interest.

"[T]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Brent*, 2011 WL 3862363, at *12 (quoting 4 Herbert Newberg & Alba Conte, Newberg on Class Actions, § 11.41 (4th ed. 2002)). *See also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) ("There is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources.").[5] This Settlement serves the public's interest by ending already protracted litigation and freeing up judicial resources. *See In re Telectronics*, 137 F. Supp. 2d at 1025; *see also Hainey*, 617 F. Supp. 2d at 679; *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 248 (S.D. Ohio 1991) (noting that the settlement of a class action lawsuit served

---

[5] *See also In re Nationwide Fin. Servs. Litig.*, No. 2:08–cv–00249, 2009 WL 8747486, at *8 (S.D. Ohio Aug. 18, 2009) ("[T]here is certainly a public interest in settlement of disputed claims that require substantial federal judicial resources to supervise and resolve."); *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007) ("noting that "[p]ublic policy generally favors settlement of class action lawsuits.").

the public interest because it "avoid[ed] a time-consuming and expensive trial" and "eliminate[d] the possibility of any time-consuming and expensive appeals.").

Particularly in light of the immediate benefits that the Settlement provides to the Class Members, and the fact that this Settlement will avoid further discovery and expensive motion practice, this "overriding public interest" would be well served by approval of this Settlement.

### 8. The Other Rule 23(e) Factors Support the Settlement.

To the extent not addressed above, the Rule 23(e) factors support the Settlement. The method of distributing relief was chosen to make the claims process as easy as possible. Rule 23(e)(2)(C)(ii). For Class Members whose purchase information was obtainable, claim forms were prepopulated with the information necessary to make a claim, a claim can easily be made electronically, and payments can be made by check or electronically. Earle Decl., ¶ 14. A unique individual code to obtain the JRNY subscription benefit will be made available electronically. *Id*.

The attorneys' fees of one third of the common fund are, as more fully set forth in the contemporaneously filed motion, well within the range of fees for a case of this nature and will not be paid until the Effective Date. Markovits Decl., ¶¶ 20, 23. Rule 23(e)(2)(C)(iii).

There is no undisclosed agreement made in connection with the Settlement. Markovits Decl., ¶ 7; Rule 23(e)(2)(C)(iv).

All class members are treated equitably relative to each other—they all have the opportunity both for a pro rata payment of money and a subscription to JRNY. Markovits Decl., ¶ 16; Rule 23(e)(2)(D).

In total, all of the factors to be considerable when determining whether to grant final approval weigh in favor of a finding that the Settlement is fair, reasonable, and adequate.

## IV. CONCLUSION

Because the proposed Settlement is fair, adequate, and reasonable, Plaintiff Walker respectfully requests that the Court grant final approval and enter the proposed Order attached as Exhibit 1.

Respectfully submitted,

*/s/ W.B. Markovits*
W.B. Markovits (0018514)
Terence R. Coates (0085579)
Justin C. Walker (0080001)
MARKOVITS, STOCK & DEMARCO, LLC
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Phone: (513) 651-3700
Fax: (513) 665-0219
*bmarkovits@msdlegal.com*
*tcoates@msdlegal.com*
*jwalker@msdlegal.com*

Nathan D. Prosser (*pro hac vice*)
HELLMUTH & JOHNSON, PLLC
8050 West 78th Street
Edina, MN 55439
Telephone: (952) 941-4005
Fax: (952) 941-2337
*nprosser@hjlawfirm.com*

Bryan L. Bleichner (*pro hac vice*)
Jeffrey D. Bores (*pro hac vice*)
CHESTNUT CAMBRONNE, PA
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Telephone: (612) 339-7300
Fax: (612) 336-2940
*bbleichner@chestnutcambronne.com*
*jbores@chestnutcambronne.com*

*Class Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 17, 2022 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *W.B. Markovits*
W. B. Markovits (0018514)